# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **LONG ISLAND POWER AUTHORITY** | ) | |
| | ) | |
| **and** | ) | **No. 21-**1190 |
| | ) | |
| **NEPTUNE REGIONAL TRANSMISSION SYSTEM, LLC,** | ) | **FERC Docket Nos. ER21-726-000, ER21-726-001, ER21-726-002** |
| *Petitioners*, | ) | |
| **v.** | ) | |
| **FEDERAL ENERGY REGULATORY COMMISSION,** | ) | |
| *Respondent.* | ) | |

## PETITION FOR REVIEW

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), Rule 15(a) of the Federal Rules of Appellate Procedure, and Rule 15 of the Local Rules of this Court, the Long Island Power Authority ("LIPA") and Neptune Regional Transmission System, LLC ("Neptune") jointly petition this Court for review of the following orders issued by the Federal Energy Regulatory Commission ("FERC"):

1.  *PJM Interconnection, L.L.C.*, Docket Nos. ER21-726-000, ER21-726-001, Order on Tariff Revisions, 175 FERC ¶ 61,152 (May 21, 2021);

2.  *PJM Interconnection, L.L.C.*, Docket No. ER21-726-002, Notice
    of Denial of Rehearing by Operation of Law, 176 FERC ¶ 62,045
    (July 22, 2021).

LIPA and Neptune were parties of record in the referenced FERC proceedings, sought timely rehearing in the FERC proceeding below, and are aggrieved by FERC's rulings in the above-referenced orders.  Venue in this Court is proper under 16 U.S.C. § 825*l*(b).  Consistent with Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Circuit Rules of this Court, LIPA and Neptune submit their Corporate Disclosure Statements contemporaneously with this Petition for Review.

Respectfully submitted,

*/s/ Michael F. McBride*
Michael F. McBride
Joseph B. Nelson
Michelle L. Castaline
Van Ness Feldman, LLP
1050 Thomas Jefferson St., NW
Washington, DC 20007-3877
Tel.:  (202) 298-1800
Fax:  (202) 338-2416
mfm@vnf.com
jbn@vnf.com
mcastaline@vnf.com

*Attorneys for Long Island Power Authority*

*/s/ William R. Hollaway, Ph.D.*
William R. Hollaway, Ph.D.
Lucas C. Townsend
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8500
whollaway@gibsondunn.com
ltownsend@gibsondunn.com

*Counsel for Neptune Regional*
*Transmission System, LLC*

Dated: September 16, 2021

# ATTACHMENT A

*PJM Interconnection, L.L.C.*, Docket Nos. ER21-726-000, ER21-726-001,
Order on Tariff Revisions, 175 FERC ¶ 61,152 (May 21, 2021).

175 FERC ¶ 61,152
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Richard Glick, Chairman;
                       Neil Chatterjee, James P. Danly, and
                       Allison Clements.

PJM Interconnection, L.L.C.                  Docket Nos.  ER21-726-000
                                                          ER21-726-001

ORDER ON TARIFF REVISIONS

(Issued May 21, 2021)

1.      On December 23, 2020, as amended on March 22, 2021, PJM Interconnection,
L.L.C. (PJM) filed, in accordance with Schedule 12 of the PJM Open Access
Transmission Tariff (OATT or Tariff) and pursuant to section 205 of the Federal Power
Act (FPA),[1] revisions to Schedule 12-Appendix and Schedule 12-Appendix A of the
Tariff (PJM Tariff Filing) to provide updated annual cost responsibility assignments
for transmission projects included in the PJM Regional Transmission Expansion Plan
(RTEP).[2]  In this order, we accept the PJM Tariff Filing effective January 1, 2021, as
requested.

## I.    **Background**

2.      PJM files cost responsibility assignments for transmission projects that the PJM
Board of Directors (PJM Board) approves as part of PJM's RTEP, in accordance with
Schedule 12 of PJM's Tariff and Schedule 6 of the Amended and Restated Operating
Agreement of PJM (Operating Agreement).[3]  Schedule 12 of the PJM Tariff establishes

---

[1] 16 U.S.C. § 824d.

[2] See the Appendix to this order for a list of the eTariff records accepted for filing
in this proceeding.

[3] In accordance with the PJM Operating Agreement, PJM "shall file with FERC a
report identifying the expansion or enhancement, its estimated cost, the entity or entities
that will be responsible for constructing and owning or financing the project, and the
market participants designated under Section 1.5.6(1) above to bear responsibility for
the costs of the project."  PJM, Intra-PJM Tariffs, OA Sched. 6 Sec. 1.6, Operating
Agreement Sched. 6 Sec. 1.6 Approval of the Final Regional Trans. (4.0.0), § 1.6(b).

Transmission Enhancement Charges for "[o]ne or more of the Transmission Owners
[that] may be designated to construct and own and/or finance Required Transmission
Enhancements by (1) the [RTEP] periodically developed pursuant to Operating
Agreement Schedule 6 or (2) any joint planning or coordination agreement between PJM
and another region or transmission planning authority set forth in Tariff, Schedule 12-
Appendix B."[4]  In developing the RTEP, PJM identifies transmission projects to address
different criteria, including PJM planning procedures, North American Electric
Reliability Corporation (NERC) Reliability Standards, Regional Entity reliability
principles and standards,[5] and individual transmission owner Form No. 715 local

---

The PJM Tariff provides that "[w]ithin 30 days of the approval of each [RTEP] or an
addition to such plan by the PJM Board pursuant to Operating Agreement, Schedule 6,
section 1.6, the Transmission Provider shall designate in the Tariff, Schedule 12-
Appendix A and in a report filed with the FERC the customers using Point-to-Point
Transmission Service and/or Network Integration Transmission Service and Merchant
Transmission Facility owners that will be subject to each such Transmission
Enhancement Charge ('Responsible Customers') based on the cost responsibility
assignments determined pursuant to this Schedule 12."  PJM, Intra-PJM Tariffs, Sched.
12, OATT Sched. 12 (14.0.0), § (b)(viii).  *See* PJM, Intra-PJM Tariffs, OATT Definitions
– L-M-N, OATT Definitions – L – M - N (28.0.0) (defining Merchant Transmission
Facilities).

[4] Required Transmission Enhancements are defined as "enhancements and
expansions of the Transmission System that (1) a [RTEP] developed pursuant to
Operating Agreement, Schedule 6 or (2) any joint planning or coordination agreement
between PJM and another region or transmission planning authority set forth in Tariff,
Schedule 12-Appendix B ('Appendix B Agreement') designates one or more of the
Transmission Owner(s) to construct and own or finance."  PJM, Intra-PJM Tariffs,
OATT Definitions – R - S, OATT Definitions – R - S (24.0.0.)  Transmission
Enhancement Charges are established to recover the revenue requirement with respect
to a Required Transmission Enhancement.  PJM, Intra-PJM Tariffs, Sched. 12, OATT
Sched. 12 (14.0.0), § (a)(i).

[5] As established by ReliabilityFirst Corporation, Southeastern Electric Reliability
Council, and other applicable Regional Entities.  *See* PJM, Intra-PJM Tariffs, OA Sched.
6 Sec. 1.2, OA Sched. 6 Sec. 1.2 Conformity with NERC and Other Applic. (2.0.0),
§§ 1.2(b) and 1.2(d).

planning criteria.  Types of Reliability Projects[6] identified in the RTEP include Regional Facilities,[7] Necessary Lower Voltage Facilities,[8] and Lower Voltage Facilities.[9]

3.      The PJM Tariff includes a hybrid cost allocation method that was accepted as complying with Order No. 1000[10] for Regional Facilities and Necessary Lower Voltage Facilities that address a reliability need.[11]  Under this method, PJM allocates 50% of the

---

[6] Reliability Projects are included in the RTEP to address one or more reliability violations or to address operational adequacy and performance issues.  PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(i)(A)(2)(a).

[7] Regional Facilities are defined as Required Transmission Enhancements included in the RTEP that are transmission facilities that:  (a) are alternating current (AC) facilities that operate at or above 500 kilovolt (kV); (b) are double-circuit AC facilities that operate at or above 345 kV; (c) are AC or direct current (DC) shunt reactive resources connected to a facility from (a) or (b); or (d) are DC facilities that meet the necessary criteria as described in section (b)(i)(D).  PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(i) (Regional Facilities and Necessary Lower Voltage Facilities).

[8] Necessary Lower Voltage Facilities are defined as Required Transmission Enhancements included in the RTEP that are lower voltage facilities that must be constructed or reinforced to support new Regional Facilities.  PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(i) (Regional Facilities and Necessary Lower Voltage Facilities).

[9] Lower Voltage Facilities are defined as Required Transmission Enhancements that:  (a) are not Regional Facilities; and (b) are not Necessary Lower Voltage Facilities.  PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(ii) (Lower Voltage Facilities).

[10] *See Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g & clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth.* v. *FERC*, 762 F.3d 41 (D.C. Cir. 2014) (*S.C. Pub. Serv. Auth.* v. *FERC*).  *See also PJM Interconnection, L.L.C.*, 142 FERC ¶ 61,214 (2013), *order on reh'g & compliance*, 147 FERC ¶ 61,128 (2014), *order on reh'g & compliance*, 150 FERC ¶ 61,038, *order on reh'g & compliance*, 151 FERC ¶ 61,250 (2015).

[11] PJM identifies reliability transmission needs and economic constraints that result from the incorporation of public policy requirements into its sensitivity analyses and allocates the costs of the solutions to such transmission needs in accordance with the

Document Accession #: 20210521-3040          Filed Date: 05/21/2021

costs of Regional Facilities or Necessary Lower Voltage Facilities on a load-ratio share basis and the other 50% based on the solution-based distribution factor (DFAX) method. PJM allocates all of the costs of Lower Voltage Facilities using the solution-based DFAX method. Cost responsibility assignments pursuant to the Order No. 1000-compliant cost allocation method are included in Schedule 12-Appendix A of the Tariff. Cost responsibility assignments for RTEP projects approved prior to the Commission's acceptance of the Order No. 1000-compliant cost allocation method are included in Schedule 12-Appendix of the Tariff.

4.      Schedule 12 of the PJM Tariff provides that cost responsibility for the portion of cost responsibility assignments allocated on a load-ratio share basis will be updated annually using the applicable zonal loads at the time of each zone's annual peak load from the 12-month period ending October 31 of the calendar year preceding the calendar year for which the annual cost responsibility assignment is determined, consistent with section 34.1 of the Tariff.[12]

5.      Schedule 12 of the PJM Tariff provides that, for the portion of cost responsibility assignments allocated pursuant to the solution-based DFAX method, PJM shall make a preliminary cost responsibility assignment for each Required Transmission Enhancement at the time such transmission facility is selected in the RTEP for purposes of cost allocation. Further, beginning with the calendar year in which a transmission facility is scheduled to enter service, and thereafter annually at the beginning of each calendar year, PJM shall update the preliminary cost responsibility assignment for each transmission facility using the values and inputs used in the base case of the most recent RTEP approved by the PJM Board prior to the date of the update.[13]

6.      Cost responsibility assignments for Regional Facilities and Necessary Lower Voltage Facilities that were allocated prior to the Commission's acceptance of the PJM Transmission Owners' Order No. 1000-compliant cost allocation method (Covered

---

type of benefits they provide. *PJM Interconnection, L.L.C.*, 142 FERC ¶ 61,214 at P 441; *see* PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(v) (assigning cost responsibility for Economic Projects that are either accelerations or modifications of Reliability Projects, or new enhancements or expansions that relieve one or more economic constraints); PJM, Intra-PJM Tariffs, OA Sched. 6 Sec. 1.5, OA Sched. 6 Sec. 1.5 Procedure for Development of the Regi. (24.0.0), § 1.5.7(c)(iii).

[12] PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(i)(A)(1).

[13] PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(iii)(H)(2). The annual update includes any projects that were included to address any individual transmission owner Form No. 715 local planning criteria.

Transmission Enhancements) are allocated pursuant to the provisions of Schedule 12-C of the PJM Tariff.[14]  For the Covered Transmission Enhancements, Schedule 12-C establishes a Current Recovery Charge in which 50% of cost responsibility is allocated annually using the using the method set forth in Schedule 12, section (b)(i)(A)(1), and the other 50% is allocated based on the method set forth in Schedule 12, section (b)(i)(A)(2)(a), which is the solution-based DFAX method.  PJM updates the solution-based DFAX method for the Covered Transmission Enhancements consistent with Schedule 12 of the PJM Tariff section (b)(iii)(H)(2).[15]

## II.    **PJM Tariff Filing**

7.       PJM states that the proposed revisions reflect updated load-ratio share cost allocations for Regional Facilities and Necessary Lower Voltage Facilities in Schedule 12-Appendix and Schedule 12-Appendix A that are based on each zone's and Merchant Transmission Facility's annual peak load from the 12-month period ending October 31, 2020.[16]  PJM states that the cost responsibility assignments to Merchant Transmission Facilities with Firm Transmission Withdrawal Rights[17] are based on the method set forth

---

[14] The Commission approved a settlement including Schedule 12-C for the Covered Transmission Enhancements.  *PJM Interconnection, L.L.C.*, 169 FERC ¶ 61,238 (2019) (accepting compliance filing to implement the settlement).  The Covered Transmission Enhancements are listed in the PJM Tariff at Schedule 12-C, Appendix A. Schedule 12-C applies a Current Recovery Charge for the assignment of cost responsibility for the Covered Transmission Enhancements listed on Schedule 12-C Appendix A.  In addition to the Current Recovery Charge for Covered Transmission Enhancements, during each month during the period beginning on the January 1, 2016 and continuing through December 31, 2025, a Transmission Enhancement Charge Adjustment is applied to Responsible Customers, as specified in Schedule 12-C, Appendix C.  *See* PJM, Intra-PJM Tariffs, OATT Sched. 12-C, OATT Sched. 12-C - Assignment of Cost Responsibility CTE (0.0.0).

[15] PJM, Intra-PJM Tariffs, OATT Sched. 12-C, OATT Sched. 12-C - Assignment of Cost Responsibility CTE (0.0.0), § 4.

[16] PJM Tariff Filing at 17 (citing PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(i)(A)(1)).

[17] Firm Transmission Withdrawal Rights are defined in the PJM Tariff as "the rights to schedule energy and capacity withdrawals from a Point of Interconnection of a Merchant Transmission Facility with the Transmission System."  PJM, Intra-PJM Tariffs, OATT Definitions – E-F, OATT Definitions – E - F (29.0.0).

in Opinion No. 503.[18] Specifically, PJM determined the cost responsibility assignments based on Merchant Transmission Facilities' respective peak load in the 12-month period ending October 31, 2020, up to the amount of Firm Transmission Withdrawal Rights set forth in their respective interconnection service agreements.[19] PJM states that Merchant Transmission Facilities with Non-Firm Transmission Withdrawal Rights are not allocated RTEP charges for the Reliability Projects.[20]

8.      The PJM Tariff Filing also includes revisions to update the solution-based DFAX method as appropriate for Regional Facilities, Necessary Lower Voltage Facilities, and Lower Voltage Facilities that are either scheduled to enter service or are in service in 2021. PJM further states that it updated the solution-based DFAX method analysis for the Covered Transmission Enhancements consistent with Schedule 12 section (b)(iii)(H)(2).[21]

## III.    **Notice, Interventions, and Responsive Pleadings**

9.      Notice of the PJM Tariff Filing was published in the *Federal Register*, 85 Fed. Reg. 86,913 (Dec. 31, 2020), with interventions and protests due on or before January 13, 2021.

10.     Timely motions to intervene were filed by American Electric Power Service Corporation; American Municipal Power, Inc.; Dominion Energy Services, Inc.; Exelon Corporation (Exelon), Old Dominion Electric Cooperative; Public Service Electric and Gas Company (PSEG); PPL Electric Utilities Corporation; FirstEnergy Transmission Companies: Hudson Transmission Partners, LLC; and Long Island Power Authority (LIPA). Duke Energy Corporation (Duke) and Dayton Power and Light Company (Dayton) filed out of time motions to intervene.

11.     LIPA and Neptune Regional Transmission System, LLC (Neptune) (jointly, LIPA/Neptune) filed a protest. On February 4, 2021, PJM filed an answer (PJM Answer) to the LIPA/Neptune protest. On March 2, 2021, LIPA/Neptune filed a motion to supplement the record in its protest and a limited response to the PJM Answer

---

[18] PJM Tariff Filing at 10 (citing *PJM Interconnection, L.L.C.*, Op. No. 503, 129 FERC ¶ 61,161 (2009)).

[19] *Id.* at 10.

[20] *Id.*

[21] *Id.* at 19.

Document Accession #: 20210521-3040      Filed Date: 05/21/2021

(LIPA/Neptune Response). On March 17, 2021, Indicated Transmission Owners filed an answer to the LIPA/Neptune Response.[22]

12.     On February 18, 2021, a Deficiency Letter was issued seeking additional information on the PJM Tariff Filing (Deficiency Letter). On March 22, 2021, PJM filed a response to the Deficiency Letter (Deficiency Response).

13.     Notice of PJM's Deficiency Response was published in the *Federal Register*, 86 Fed. Reg. 16,592 (Mar. 30, 2021), with interventions and protests due on or before April 12, 2021. LIPA/Neptune protested the Deficiency Response (LIPA/Neptune Deficiency Protest), and Exelon filed comments on the Deficiency Response. PJM filed motion for leave to answer and limited answer to the LIPA/Neptune Deficiency Protest and Exelon's comments on PJM's Deficiency Response (PJM April 27, 2021 Answer). The Indicated Transmission Owners filed motion for leave to answer and limited answer to the LIPA/Neptune Deficiency Protest (Indicated Transmission Owners April 27, 2021 Answer).

## IV.     **Responsive Pleadings**

### A.     **LIPA/Neptune Protest of PJM Tariff Filing**

14.     LIPA/Neptune argue that the 2021 cost allocation assignments in the PJM Tariff Filing do not meet the PJM Tariff's purpose of allocating costs based upon total use, in both directions, and fail to meet the roughly commensurate standard. LIPA/Neptune state that the purpose of the solution-based DFAX method is to represent a measure of the use by the load of each zone or Merchant Transmission Facility of a required transmission project and to assign costs based on relative use.[23] LIPA/Neptune contend that there are two elements that are the root cause of the flawed 2021 cost allocations – specifically the use of the "netting" procedure and the *de minimis* rule in the solution-based DFAX method. LIPA/Neptune state that they have filed a complaint under section 206 of the FPA challenging PJM's continued use of the "netting" procedure and the *de minimis* rule

---

[22] For the purposes of this filing, the Indicated Transmission Owners are: American Electric Power Service Corporation; The Dayton Power and Light Company; Duke Energy Corporation; East Kentucky Power Cooperative, Inc.; The FirstEnergy Transmission Companies; PPL Electric Utilities Corporation; Public Service Electric and Gas Company; and Virginia Electric and Power Company.

[23] LIPA/Neptune Protest at 3 (citing PJM, Intra-PJM Tariffs, OATT, Sched. 12 (14.0.0), § (b)(iii)(H)(2)).

Document Accession #: 20210521-3040     Filed Date: 05/21/2021

in the solution-based DFAX method.[24]   Accordingly, LIPA/Neptune contend that should the Commission affirmatively find in the Complaint proceeding that netting and the *de minimis* rule, individually or collectively, are unjust and unreasonable, that finding should be applied to the 2021 cost allocations in the PJM Tariff Filing.[25]   LIPA/Neptune assert that the use of netting and the *de minimis* rule has produced unjust and unreasonable results in PJM's 2021 cost allocation assignment.  Therefore, LIPA/Neptune specifically protest each of the solution-based DFAX cost allocation assignments made to Neptune in the PJM Tariff Filing.[26]

15.     LIPA/Neptune state that their initial review of the 2021 cost allocations reveals significant cost shifts.[27]   LIPA/Neptune further contend that PJM provides no substantive explanation, much less evidentiary support, as to how the proposed cost allocations align with the derived benefits.  LIPA/Neptune argue that the 2021 cost allocation in the PJM Tariff Filing simply reports the re-calculation of the cost allocation percentages.  In doing so, LIPA/Neptune argue that PJM fails to explain the changes in cost allocations.[28] LIPA/Neptune further argue that as a result, PJM fails to meet its burden of proof under section 205 of the FPA to justify that the 2021 cost allocation values in PJM's Tariff Filing are just and reasonable and not unduly preferential or discriminatory.[29]

16.     LIPA/Neptune contend that the PJM Tariff Filing simply does not have sufficient information to allow parties, including the Commission, to evaluate the proposed cost allocations, and more information is required.[30]   LIPA/Neptune argue, as explained in the supporting Affidavit of Mr. Jeffrey T. Wood, that while some preliminary conclusions can be made comparing the proposed 2021 cost allocations to the 2020 cost allocation results, a full analysis cannot be completed without additional information.[31]   In this

---

[24] *Id*. at 5 (citing *Neptune Reg'l Transmission Sys. v. PJM Interconnection, L.L.C.*, Complaint, Docket No. EL21-39-000 (filed Jan. 12, 2021) (Complaint)).

[25] *Id.*

[26] *Id.* at 5-6.

[27] *Id.* at 11, Tbl. 1.

[28] *Id.* at 7.

[29] *Id.* at 6-7.

[30] *Id.* at 8.

[31] *Id.* (citing Ex. A, Aff. of Jeffrey T. Wood at Q7 (Wood Aff.)).

regard, LIPA/Neptune state that they have contacted PJM and requested the base case and DFAX calculations used by PJM in calculating the 2021 cost allocation assignments for a subset of PSEG projects that have been predominantly allocated to Neptune.[32] LIPA/Neptune state that the Wood Affidavit provides an initial evaluation of the cost allocation results in the PJM Tariff Filing, and the receipt of additional data will allow for further evaluation of the 2021 cost allocations.[33] LIPA/Neptune maintain that a more fulsome review requires access to PJM's base case data and solution-based DFAX results, which it has requested from PJM.[34]

17.     LIPA/Neptune argue that in addition to significant swings in the 2021 cost allocations that are not explained by PJM, there are numerous instances where there is no solution-based DFAX allocation to the constructing transmission owner's zone that are similarly unexplained.  LIPA/Neptune further argue that there is no doubt that a transmission facility constructed within a transmission owner's zone to solve a reliability violation within that zone provides benefits to that Zonal load.  Therefore, LIPA/Neptune assert that the exclusions of such zones from solution-based DFAX method allocations are the type of misallocation of costs that the Commission and courts have long-recognized as unjust and unreasonable.[35]

18.     LIPA/Neptune point to eight PSEG sub-projects that are allocated 100% to Neptune as evidence of the unexplained exclusion of solution-based DFAX method cost allocations to the constructing transmission owner's zone.  LIPA/Neptune state that each of these sub-projects were initiated as end-of-life replacements to support service to PSEG's network load and not intended to accommodate PSEG's load growth.[36]

---

[32] LIPA/Neptune state that PJM has informed Neptune that the data will not be available from PJM until January 15, 2021, or later.  *Id.*

[33] *Id.* at 8.

[34] *Id.* at 18-19.

[35] *Id.* at 13-14 (citing *Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254, 1261, *reh'g denied*, 905 F.3d 671 (D.C. Cir. 2018); *Ill. Com. Comm'n v. FERC*, 721 F.3d 764, 775 (7th Cir. 2013)).

[36] *Id.* at 13-14.  LIPA/Neptune identify the sub-projects as having the following Upgrade IDs:  b2837.1, b2837.2, b2837.3, b2837.6, b2837.7, b2837.8, b2837.9 and b2933.31.  LIPA/Neptune further note that two additional sub-projects, b2836.3 and b2836.4, are allocated 100% to the Atlantic City Electric Company (AEC) zone, and these sub-projects represent 10 out of 18 elements analyzed in the Complaint.  LIPA/Neptune further state that in the 2020 Cost Allocation Filing, 100% of the costs for all 10 of the noted project elements were assigned to Neptune, with two additional

LIPA/Neptune contend that there is no reasoned basis from which the PSEG zone can be treated as having no derived benefits and be excluded from cost allocation for these identified transmission projects. While LIPA/Neptune note that 2021 detailed data for these projects was not yet available from PJM at the time they filed their protest, LIPA/Neptune contend that it is likely that the PSEG zone will continue to have significant modeled usage in both directions over each of these upgrades. LIPA/Neptune assert such levels of significant calculated usage of these upgrades by a constructing transmission owner's zone cannot be masked or ignored through administrative actions, such as the use of the netting procedure and the *de minimis* rule.

19.     LIPA/Neptune request that the Commission find that PJM has failed to provide sufficient information to demonstrate that the proposed 2021 cost allocation assignments submitted in the PJM Tariff Filing reflect assignment of costs roughly commensurate with derived benefits and that PJM has not demonstrated that the proposed rates are just and reasonable in accordance with the requirements of section 205 of the FPA. LIPA/Neptune further request that the Commission set the proposed cost allocation assignments for hearing, which may be held in abeyance pending the Commission's action on the Complaint, or consolidated into such other proceedings pursuant to section 206 of the FPA as the Commission may initiate within that docket. Finally, LIPA/Neptune request the Commission take any further actions it deems appropriate in order to ensure that the 2021 cost allocation using the solution-based DFAX method is just and reasonable and not otherwise unduly preferential or unduly discriminatory.[37]

## B.     **Answers**

20.     PJM states that the arguments raised in the protest are outside the scope of this proceeding, noting that the concerns raised by LIPA/Neptune have been raised in the Complaint challenging the continued use of the netting procedure and the *de minimis* provisions.[38] PJM states that it will provide its response to the Complaint in that proceeding, and PJM limits its response herein to the allegation that PJM has failed to follow its Tariff in implementing the solution-based DFAX method and to the objections to PJM's annual updated allocation of cost responsibility assignments.[39] PJM argues that

---

project elements, b2835.1 and b2835.2 assigned 100% to the PECO Energy Company (PECO) zone. *Id.*

[37] *Id.* at 23.

[38] PJM Answer at 3.

[39] *Id.*

LIPA/Neptune have failed to show that PJM incorrectly calculated the solution-based DFAX analysis.[40]  Rather, PJM contends that LIPA/Neptune's argument seems to be that even though PJM accurately calculated the DFAX analysis and correctly applied netting and the *de minimis* provision to the results of the solution-based DFAX method, they disagree with the results and demand the Commission undertake an independent and studied evaluation of the 2021 cost allocation assignments to determine whether or not they are just and reasonable.[41]  PJM maintains that a challenge to the cost allocation method is incorrectly raised in this docket and should be rejected.

21.    Indicated Transmission Owners assert that the only issue in this proceeding is whether the cost responsibility assignments included in the PJM Tariff Filing are consistent with the Commission accepted method set forth in Schedule 12 of the PJM Tariff.  Indicated Transmission Owners contend that LIPA/Neptune's challenge to the netting and the *de minimis* provision of the solution-based DFAX method is outside the scope of this proceeding.[42]  Finally, Indicated Transmission Owners assert that LIPA/Neptune's attempt to distinguish the results of the solution-based DFAX cost allocation method from the method itself is a "distinction without a difference, because [LIPA/Neptune's] argument that the 'outcomes' are unjust and unreasonable is based entirely on their claim that the underlying Commission approved method is unjust and unreasonable."[43]  Therefore, Indicated Transmission Owners assert that LIPA/Neptune raise the same arguments in this proceeding that they raise in the Complaint, which constitutes the inclusion of a section 206 complaint in pleadings filed in response to a section 205 filing, and is counter to Commission precedent.[44]  Furthermore, Indicated Transmission Owners contend that LIPA/Neptune's pleadings are an attempt to relitigate issues that have been decided.[45]

## C.    LIPA/Neptune Response

22.    In their response, LIPA/Neptune explain that since filing their protest, they received the requested base case and solution-based DFAX calculations used by PJM

---

[40] *Id.* at 4.

[41] *Id.*

[42] Indicated Transmission Owners Answer at 3-4.

[43] *Id.* at 5.

[44] *Id.* at 5-6.

[45] *Id.* at 7-8.

Document Accession #: 20210521-3040          Filed Date: 05/21/2021

in calculating 2021 cost allocation assignments for a subset of PSEG projects that have been predominantly allocated to Neptune.  LIPA/Neptune argue that the new data confirms that the problems with the challenged 2021 cost allocations identified in the LIPA/Neptune protest are substantiated based on the data analysis, demonstrating that the proposed cost allocations are not just and reasonable under cost causation principles.[46]

23.     In addition, LIPA/Neptune dispute PJM's contention that the only obligation of the Commission in this proceeding is to ensure that PJM has correctly applied its Tariff.  In doing so, LIPA/Neptune argue that PJM fails to explain the changes in cost allocations.[47]  LIPA/Neptune counter that under section 205 of the FPA, the Commission is obligated to determine whether the proposed rates filed by PJM are just and reasonable.[48]

24.     LIPA/Neptune also counter PJM's assertions that their challenge is outside the scope of this proceeding.  LIPA/Neptune assert that their protest here concerns whether the specific dollar amounts being allocated in the PJM Tariff Filing are just and reasonable, which is distinct from the concerns raised by LIPA/Neptune in the Complaint challenging the continued use of the netting procedure and the *de minimis* provision.  Furthermore, LIPA/Neptune assert that their protest does not, as the PJM Answer alleges, oppose the use of the solution-based DFAX method.[49]  Therefore, LIPA/Neptune assert that their protest cannot be considered a collateral attack on the solution-based DFAX method as alleged in the PJM Answer.

### D.     Deficiency Letter, Deficiency Response, and Pleadings

25.     To address transmission projects scheduled to enter service in the 2021 calendar year, the PJM Tariff Filing included changes from the preliminary cost responsibility assignment for each Required Transmission Enhancement at the time such transmission facility is selected in the RTEP for purposes of cost allocation, as well as changes from the prior year allocations for projects already in service, the Deficiency Letter sought additional information concerning the proposed updates to cost responsibility

---

[46] LIPA/Neptune Response at 3-5 (citing Ex. A, Supp. Aff. of Jeffrey T. Wood (Wood Supplemental Aff.)).

[47] *Id.* at 7.

[48] LIPA/Neptune Response at 6-7.

[49] *Id.* at 7-9.

assignments based on the solution-based DFAX method for projects included in the PJM Tariff Filing.

## 1.    Deficiency Response

26.    PJM explains that the solution-based DFAX method is formulaic in a manner consistent with the Commission's expectations when it initially established settlement negotiations for the development of a cost allocation method in PJM, the goal of which was to agree on "a method that makes the [cost] allocation process routine."[50]  PJM asserts that the Commission made clear that its cost allocation process should be routine, with future RTEP cost allocation filings "informal in nature" and providing PJM with very little discretion.[51]  PJM states that the solution-based DFAX method is a comprehensive formula that determines cost allocation based on "beneficiary pays" principles.  PJM explains that a DFAX represents a measure of the use of the upgrade by each megawatt of a zone's aggregate load served by a megawatt of PJM generation, as determined by power flow analysis.  PJM further explains that the inputs to the cost allocation method are updated annually using the annual RTEP starting base case for the upcoming RTEP year to develop all solution-based DFAX method values.  Therefore, the solution-based DFAX method values are intended to reflect changing uses of the transmission system since the last annual update.[52]

27.    In response to the request that PJM explain the changes in the solution-based DFAX method of cost allocations for transmission projects included in the 2021 annual update, PJM asserts that the changes in use of the transmission system as well as changes to Schedule 12 of the PJM Tariff affect these allocations.[53]  In response to the Commission's request for further documentation on projects included in the RTEP whose solution-based DFAX values have changed in the PJM Tariff Filing, PJM asserts that to

---

[50] PJM Deficiency Response at 4 (citing *PJM Interconnection, L.L.C.*, 119 FERC ¶ 61,067, at P 3 (2007)).

[51] *Id.*

[52] *Id.* at 5-6.

[53] *Id.* at 13-16, 21 (citing *PJM Interconnection, L.L.C.*, 168 FERC ¶ 61,133 (2019), *reh'g denied & clarification granted*, 171 FERC ¶ 61,012 (2020) (addressing remand of PJM Transmission Owner proposal to allocate 100% of the costs of projects that are included in the RTEP solely to address individual transmission owner Form No. 715 local planning criteria to the transmission zone of the transmission owner whose Form No. 715 local planning criteria underlie each project)).  *See Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254, *reh'g denied*, 905 F.3d 671.

isolate specific changes that drove the cost allocation change for every baseline upgrade "would be time-consuming, complex and costly, and the assumptions used to make them would be subject to debate and potential challenges."[54]  PJM does quantify the number of projects at issue by providing the total number of upgrades with solution-based DFAX cost allocations that were included in the 2020 and 2021 annual updates, as well as the subset of those upgrades whose solution-based DFAX values have changed in the PJM Tariff Filing and those upgrades whose solution-based DFAX cost allocations have changed significantly (greater than 50%).[55]

28.    Additionally, PJM states that it will provide stakeholders with the analytical files necessary to verify PJM's updated cost allocation calculations through its RTEP process. However, PJM states that stakeholders must first make a request for this information through PJM's established CEII process.  PJM offers that in the rare instances where stakeholders have requested this information, it has often included extensive discussions with PJM staff to help those stakeholders understand the information that has been provided and how it can be used to determine the cost allocations.[56]

29.    Finally, PJM states that the Commission has previously found that the information that PJM provides to stakeholders through the RTEP process is sufficient for the Commission and stakeholders to verify PJM's updated cost allocations.[57]  PJM further states that the Commission has explained that stakeholders can replicate PJM's the solution-based DFAX analysis using the information PJM provides and the formula set forth in Schedule 12 of the PJM Tariff.[58]

       **2.**     **Pleadings**

          **a.**       **Protests and Comments**

30.    LIPA/Neptune contend that PJM presented a summary table and a series of tables listing those projects for which there were differences between the initial or 2020

---

[54] *Id.* at 16-17.

[55] *Id.* at 10, Tbl. 1 at 11-12.  PJM defines a "Large Difference" as greater than 50%.  *Id.*, Tbl. 1 at 10.

[56] *Id.* at 24-25.

[57] *Id.* at 25 (citing *PJM Interconnection, L.L.C.*, 170 FERC ¶ 61,156, at P 18 (2020)).

[58] *Id.* (citing *PJM Interconnection, L.L.C.*, 165 FERC ¶ 61,078, at P 22 (2018)).

solution-based DFAX calculations and the proposed 2021 cost allocation assignments, but that the PJM Deficiency Response does not provide the requested information. LIPA/Neptune state that PJM unilaterally established that there must be at least a 50% change for at least one zone in order for the change to be deemed "significant." LIPA/Neptune assert that this 50% threshold is extraordinarily high and without any technical or legal support. LIPA/Neptune contend that while tabulated, specific projects deemed "significant" are not identified. LIPA/Neptune state that PJM does not explain the level of year-to-year differences that routinely occur within the DFAX calculations and distinguish these differences from the 50% threshold for significance. Further, LIPA/Neptune contend that by limiting the threshold to a cost-shift, PJM ignores aggregate cost shifting between multiple zones.[59]

31.     LIPA/Neptune argue that producing a summary table and re-packaging the information from the original filing is neither an explanation of the changes nor documentation that is responsive to the Deficiency Letter establishing that such changes are just and reasonable. LIPA/Neptune contend that PJM's failure to produce the requested documentation means that the PJM Tariff Filing remains deficient and cannot be accepted as meeting the requirements of FPA section 205.[60] LIPA/Neptune state that an evidentiary hearing of the proposed 2021 cost responsibility assignments is required.[61]

32.     Exelon contends that while PJM describes the types of transmission system modifications that can drive changes in cost responsibility assignments, there are many thousands of changes to the transmission system from year-to-year that may drive changes in cost allocation. Exelon contends that PJM does not attempt to isolate which of the multitude of transmission system modifications cause the changes in cost allocations for each individual transmission enhancement and expansion.[62]

33.     Exelon agrees that it is difficult to pinpoint a single driver for these extreme swings in cost responsibility assignments, and some of the rather drastic cost shifts observed are not the result of drastic changes in flows (and thus usage). For example, Exelon notes that small changes in the models and assumptions that underlie the solution-based DFAX calculations, such as the removal of a single generator from the interconnection queue that has not been physically built, can shift all the costs from one

---

[59] LIPA/Neptune Deficiency Protest at 3.

[60] *Id.* at 6-7.

[61] *Id.* at 8.

[62] Exelon Deficiency Comments at 3.

zone to another.[63]  Exelon contends that the potential for drastic cost shifts as the result of discrete changes in the models and assumptions underlying the solution-based DFAX method suggests that there is an opportunity to improve the solution-based DFAX method.[64]

34.    Exelon supports and encourages a full Commission review of the causes of the changes in cost responsibility assignments for individual enhancements and expansions as reported by PJM in its 2021 annual update as supplemented in the Deficiency Letter Response.[65]

### b.    Answers

35.    PJM states that the Deficiency Response fully responded to the requests presented in the Deficiency Letter.[66]  Specifically, PJM contends that the Deficiency Response explained that there have been no changes to the solution-based DFAX method formula since it was accepted in 2013.  PJM further explains that although the solution-based DFAX methodology itself does not change, it updates, on an annual basis, the planning model used to calculate cost assignments pursuant to the methodology to account for changes to the PJM transmission system.  PJM contends that it is not feasible to unwind cost allocation assignments in an attempt to isolate which of the many thousands of changes to the transmission system from year-to-year may have caused a change to the cost allocation for a specific transmission enhancement or expansion and that, as such, PJM does not have documentation identifying the particular causes driving changes in cost allocation for each and every baseline upgrade.[67]

36.    PJM states that the protest is an attempt to continue arguments that the Commission should direct PJM to modify the approved solution-based DFAX method.[68]  PJM contends that the only issue in this proceeding is whether the PJM-determined cost

---

[63] *Id.* at 5.

[64] *Id.* at 6.

[65] *Id.*

[66] PJM April 27, 2021 Answer at 3.

[67] *Id.* at 3-4.

[68] *Id.* at 6.

responsibility assignments are consistent with the Commission-accepted methodologies set forth in Schedule 12 of the PJM Tariff.[69]

37.     The Indicated Transmission Owners state that LIPA/Neptune do not challenge PJM's implementation of the Schedule 12 methodology or make any claim that PJM inaccurately applied the Schedule 12 methodology, but LIPA/Neptune continue to challenge the justness and reasonableness of two Commission-approved elements of that methodology - PJM's use of the netting procedure and the *de minimis* threshold - as no longer just and reasonable and seek an evidentiary hearing in this section 205 proceeding in order to modify those elements.[70]  The Indicated Transmission Owners argue that modifications to an existing filed rate can only be raised in a complaint proceeding filed under section 206 of the FPA[71] and that Commission precedent prohibits the inclusion of a complaint pursuant to section 206 in pleadings filed in response to a filing pursuant to section 205 of the FPA.[72]

38.     The Indicated Transmission Owners state that PJM did not propose a change to the solution-based DFAX method and that the PJM Tariff Filing simply inserted updated load information and solution-based DFAX method calculations and reported the re-calculated cost allocations to the Commission, as required under Schedule 12 of the PJM Tariff.  The Indicated Transmission Owners argue that none of these actions supports modifying the solution-based DFAX method or setting the methodology for evidentiary hearing.[73]

## V.     <u>Discussion</u>

### A.     <u>Procedural Matters</u>

39.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure,[74] the timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

---

[69] *Id.* at 7.

[70] Indicated Transmission Owners April 27, 2021 Answer at 4.

[71] 16 U.S.C. § 824e.

[72]  Indicated Transmission Owners April 27, 2021 Answer at 4-5.

[73] *Id.* at 6.

[74] 18 C.F.R. § 385.214 (2020).

Document Accession #: 20210521-3040      Filed Date: 05/21/2021

40.     Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure,[75] we grant the late-filed motions to intervene of Duke and Dayton given their interest in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

---

[75] *Id.* § 385.214(d).

41.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure prohibits an answer to a protest unless otherwise ordered by the decisional authority.  We accept the answers of PJM and the Indicated Transmission Owners, and the LIPA/Neptune motion to supplement the record, as they have provided information that assisted us in our decision-making process.[76]

## B.     Substantive Matters

42.     We accept the proposed PJM Tariff Filing, effective January 1, 2021, as requested.  As detailed below, the Commission has previously found that review of proposed revisions to Schedule 12-Appendix and Schedule 12-Appendix A of the Tariff to provide updated annual cost responsibility assignments for transmission projects included in the PJM RTEP is limited to whether PJM has correctly applied Schedule 12 of the PJM Tariff.[77]  Accordingly, we find that the PJM Tariff Filing has correctly applied the PJM Tariff.

43.     The LIPA/Neptune protest raises two issues.  First, LIPA/Neptune assert that the portion of cost responsibility assigned pursuant to the solution-based DFAX method, and specifically through use of the netting and the *de minimis* threshold,[78] have produced unjust and unreasonable results.  Second, LIPA/Neptune raise a concern that the PJM Tariff Filing does not contain sufficient information to allow others, including the Commission, to evaluate the calculation and basis of the proposed cost allocations, and more information is required.[79]  As a result, LIPA/Neptune argue that the Commission does not have enough information to determine whether PJM has correctly implemented its Tariff.  We discuss these issues below.

---

[76] *Id.* 18 C.F.R. § 385.213(a)(2) (2020).

[77] *PJM Interconnection, L.L.C.*, 165 FERC ¶ 61,078 at PP 22, 24.

[78] Under netting, PJM models the transfer of the net of energy flow in the positive and negative directions from generation to all load within an individual transmission zone, and the transfer to the transmission zone.  Under the *de minimis* threshold, no cost responsibility shall be assigned to a responsible zone unless the magnitude of the distribution factor is greater than or equal to one percent.  *See* PJM Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(iii) (DFAX Analysis for Reliability Projects).

[79] LIPA/Neptune Protest at 8.

1.   **Whether the Solution-Based DFAX Method Cost Allocation Method is Unjust and Unreasonable**

44.    We reject LIPA/Neptune's challenges to the portion of cost responsibility assigned pursuant to the solution-based DFAX method.  In Order No. 1000, the Commission required public utility transmission providers to have an *ex ante* cost allocation method on file with and approved by the Commission.  This cost allocation method is required to explain how the costs of new transmission facilities selected in a regional transmission plan for purposes of cost allocation are to be allocated, consistent with the cost allocation principles set forth in Order No. 1000.[80]  In PJM's Order No. 1000 compliance proceedings, the Commission accepted the proposal by the PJM Transmission Owners to use the hybrid cost allocation method in which PJM allocates 50% of the costs of Regional Facilities or Necessary Lower Voltage Facilities on a load-ratio share basis and the other 50% based on the solution-based DFAX method as just and reasonable.[81]  LIPA/Neptune's protest concerns only the portion of cost responsibility assigned pursuant to the solution-based DFAX method.

45.    The cost responsibility assigned pursuant to the solution-based DFAX method is determined using a formulaic mechanism pursuant to which PJM calculates the distribution factor based on the flows across the facilities.  Under the solution-based DFAX method, PJM evaluates the projected relative use of a new Reliability Project by load in each zone and withdrawals by Merchant Transmission Facilities and, through this power flow analysis, identifies projected benefits for individual entities in relation to power flows.  Furthermore, Schedule 12 of the PJM Tariff contains a detailed description of how PJM is to perform the solution-based DFAX method analysis.  Specifically, Schedule 12 of the PJM Tariff provides that:

> the Transmission Provider, based on a computer model of the electric network and using power flow modeling software, shall calculate distribution factors, represented as decimal values or percentages, which express the portions of a transfer of energy from a defined source to a defined sink that will flow across a particular transmission facility or group of transmission facilities.  These distribution factors represent a measure of the use by the load of each Zone or Merchant Transmission Facility (collectively, "Responsible Zone") of

---

[80] Order No. 1000-A, 139 FERC ¶ 61,132 at P 286.

[81] *PJM Interconnection, L.L.C.*, 142 FERC ¶ 61,214 at PP 411-18.

the Required Transmission Enhancement, as determined by a
power flow analysis.[82]

46.     Since filing their protest of the PJM Tariff Filing, LIPA/Neptune state that they
have received from PJM the base case and DFAX calculations used by PJM in
calculating the proposed 2021 cost allocation assignments filed in this proceeding for a
subset of projects raised in the protest.  LIPA/Neptune state that, with the receipt of this
new data requested from PJM, LIPA/Neptune conclude that the proposed 2021 cost
allocations are not correlated with the flows from PJM's production cost analysis and
therefore the solution-based DFAX method is not just and reasonable.  Moreover,
LIPA/Neptune argue that based on their supplemental analysis of the selected projects
from the recently received PJM data, the changes in cost allocation assignments between
2020 and 2021 are unjust and unreasonable.[83]

47.     While LIPA/Neptune contend that they are challenging the results of the solution-
based DFAX method, we find their protest to be a challenge to the *ex ante* cost allocation
method.  The Commission has previously rejected protests as beyond the scope of the
proceeding where the protests challenge the cost allocation method in PJM's Tariff
rather than whether PJM properly applied its Tariff.[84]  In this regard, we agree with
PJM that the protest of the cost allocation method accepted as in compliance with
the requirements of Order No. 1000, i.e., the currently effective tariff, is beyond the
scope of this proceeding.  Rather, the review of the instant filing is limited to whether
PJM has correctly applied Schedule 12 of the PJM Tariff.[85]  Moreover, as noted,
LIPA/Neptune have filed a Complaint in Docket No. EL21-39-000 challenging the
justness and reasonableness of certain aspects of the solution-based DFAX method,

---

[82] PJM, Intra-PJM Tariffs, OATT, Sched. 12 (14.0.0), § (b)(iii)(A).  The PJM
Tariff further explains that the "distribution factors represent the ratio of: (i) a change in
megawatt flow on a Required Transmission Enhancement to (ii) a change in megawatts
transferred to aggregate load within a Zone or, in the case of a Merchant Transmission
Facility, the point of withdrawal associated with Firm Transmission Withdrawal Rights
over such Merchant Transmission Facility."  *Id.* § (b)(iii)(A)(2).

[83] LIPA/Neptune Motion at 4.

[84] *PJM Interconnection, L.L.C.*, 170 FERC ¶ 61,156 at P 18.

[85] *PJM Interconnection, L.L.C.*, 165 FERC ¶ 61,078 at PP 22, 24.

Docket Nos. ER21-726-000 and ER21-726-001                                          - 22 -

and we find that proceeding is the appropriate place to consider the identical issues raised in this proceeding.[86]

## 2.  **Whether PJM has Correctly Implemented its Tariff**

48.    Schedule 12 of the PJM Tariff defines the method for allocating costs and outlines PJM's responsibility for providing market participants with the opportunity to assess the details of its cost responsibility assignments.[87]  The information available through this process is the basis for the initial understanding of cost responsibility allocations, which is then updated when the project is placed in service and thereafter annually "using the values and inputs used in the base case of the most recent [RTEP] approved by the PJM Board prior to the date of the update."[88]  For the annual update, the PJM Tariff further provides that "[a]ll values and inputs used in the calculation of the distribution factor in a determination of cost responsibility shall be the same values and inputs as used in the base case of the most recent [RTEP] approved by the PJM Board prior to the determination of cost responsibility."[89]

49.    The record indicates that PJM responded to a request by LIPA/Neptune to provide them with information in order to replicate the proposed cost allocations in this proceeding.[90]  We find that, through this process, PJM has provided transparency with respect to the cost allocation calculations consistent with the requirements of Schedule 6. In response to the deficiency letter, PJM states that providing additional information regarding the basis for the updates is not practical because this could require removing potentially thousands of transmission changes across the PJM system from the power

---

[86] *See Stowers Oil & Gas Co*., 27 FERC ¶ 61,001 (1984) (explaining that the Commission "is generally master of its own calendar and procedures").

[87] Schedule 6, of the Operating Agreement provides details of the process to identify new expansions and enhancements that PJM uses to vet (including the notice provisions) the modeling assumptions (etc.) with stakeholders. *See* PJM, Intra-PJM Tariffs, OA Sched. 6 Sec. 1.5, Operating Agreement Sched. 6 Sec. 1.5 Procedure for Development of the Regi, (26.0.0).

[88] PJM, Intra-PJM Tariffs, Sched. 12, OATT Sched. 12 (14.0.0), § (b)(iii)(H)(2).

[89] *Id*.

[90] *See PJM Interconnection, L.L.C.*, 165 FERC ¶ 61,078 at P 23 (emphasizing that due to the complexity of these calculations, PJM will respond to participants requests for additional information regarding cost assignments).

flow models in order to recreate the conditions that existed when a transmission enhancement or expansion was first approved by the PJM Board.[91] PJM contends that making all of these adjustments would be complex, and the assumptions used to make them would be subject to debate and potential challenges.[92] PJM further explains that because the inputs to the solution-based DFAX method are updated annually to reflect changing uses of the transmission system over time, cost allocation changes are an expected outcome.[93] As discussed below, the solution-based DFAX method is formulaic and does not contemplate modification on a project-by-project basis; rather, it is a comprehensive formula that determines cost allocations based on a computer model of the PJM transmission system.[94]

50.     We agree with PJM that the PJM Tariff describes the solution-based DFAX method process in detail.[95] Moreover, as noted, PJM provides information to stakeholders to explain individual cost assignments on request.[96] As the Commission has previously found, the "complexity" of the application of the solution-based DFAX method does not preclude PJM from relying on the method in its Tariff.[97] While we note the changes in the cost allocations for the cited projects, there is nothing in the record to indicate that PJM failed to follow its Tariff in revising these allocations. Instead, as noted above, the LIPA/Neptune concerns appear to focus on specific aspects of the

---

[91] PJM Deficiency Response at 16-17.

[92] *Id.* at 17.

[93] *Id.* at 21.

[94] *See PJM Interconnection, L.L.C.*, 165 FERC ¶ 61,078 at P 22 ("The Tariff describes the solution-based DFAX method, including certain calculations in detail, and the distribution factor analysis is a standard computational tool used in electrical engineering, which can be replicated.").

[95] *Id.* at 25 (citing *PJM Interconnection, L.L.C.*, 165 FERC ¶ 61,078 at P 22).

[96] PJM states that historically it has received fewer than five requests in any one year for cost allocation filings from any stakeholders and this information has been made available, often including extensive discussions with PJM staff to help those stakeholders understand the information that has been provided and how it can be used to determine the cost allocations. *Id.*

[97] *PJM Interconnection, L.L.C.*, 165 FERC ¶ 61,078 at P 22. *See PJM Interconnection, L.L.C.*, 170 FERC ¶ 61,156 at P 18.

solution-based DFAX method that are a subject of the Complaint in Docket No. EL21-39-000.

51.     PJM requests a waiver of the Commission's 60-day prior notice requirement to permit an effective date of January 1, 2021, for the revised Tariff sections filed herein. PJM states that good cause exists for granting this waiver because the amendments to Schedule 12-Appendix and Schedule 12-Appendix A reflect the updated annual cost responsibility assignments filed in accordance with Schedule 12 of the Tariff and do not contain any new upgrades, but update existing cost responsibility assignments.  We grant waiver of the Commission's 60-day prior notice requirement for good cause shown.[98]

The Commission orders:

        We accept PJM's proposed Tariff revisions, effective January 1, 2021, as requested, as discussed in the body of this order.

By the Commission.  Commissioner Christie is not participating.

( S E A L )


                                        Debbie-Anne A. Reese,
                                          Deputy Secretary.


_____

[98] *Cent. Hudson Gas & Elec. Corp.*, 60 FERC ¶ 61,106, *order on reh'g*, 61 FERC ¶ 61,089 (1992).

# Appendix

PJM Interconnection, L.L.C., Intra-PJM Tariffs

- SCHEDULE 12.APPENDIX 1, OATT SCHEDULE 12.APPENDIX 1 Atlantic City Electric Company, 18.1.0
- SCHEDULE 12.APPENDIX 2, OATT SCHEDULE 12.APPENDIX 2 Baltimore Gas and Electric Com, 13.0.0
- SCHEDULE 12.APPENDIX 3, OATT SCHEDULE 12.APPENDIX 3 Delmarva Power & Light Company, 19.0.0.
- SCHEDULE 12.APPENDIX 5, OATT SCHEDULE 12.APPENDIX 5 Metropolitan Edison Company, 22.0.0.
- SCHEDULE 12.APPENDIX 7, OATT SCHEDULE 12.APPENDIX 7 Pennsylvania Electric Company, 24.0.0.
- SCHEDULE 12.APPENDIX 8, OATT SCHEDULE 12.APPENDIX 8 PECO Energy Company, 21.0.0.
- SCHEDULE 12.APPENDIX 9, OATT SCHEDULE 12.APPENDIX 9 PPL Electric Utilities Corpora, 22.0.0.
- SCHEDULE 12.APPENDIX 10, OATT SCHEDULE 12.APPENDIX 10 Potomac Electric Power Compan, 20.0.0.
- SCHEDULE 12.APPENDIX 12, OATT SCHEDULE 12.APPENDIX 12 Public Service Electric and G, 22.0.0.
- SCHEDULE 12.APPENDIX 14, OATT SCHEDULE 12.APPENDIX 14 Monongahela Power Company, Th, 26.0.0.
- SCHEDULE 12.APPENDIX 17, OATT SCHEDULE 12.APPENDIX 17 AEP Service Corporation, 23.0.0.
- SCHEDULE 12.APPENDIX 20, OATT SCHEDULE 12.APPENDIX 20 Virginia Electric and Power, 22.0.0.
- SCHEDULE 12.APPENDIX 22, OATT SCHEDULE 12.APPENDIX 22 NAEA Rock Springs, LLC, 14.0.0.
- SCHEDULE 12.APPX A - 2, OATT SCHEDULE 12.APPENDIX A - 2 Baltimore Gas and Electric, 15.0.0.
- SCHEDULE 12.APPX A - 3, OATT SCHEDULE 12.APPENDIX A - 3 Delmarva Power & Light Comp, 15.0.0.
- SCHEDULE 12.APPX A - 4, OATT SCHEDULE 12.APPENDIX A - 4 Jersey Central Power & Ligh, 15.0.0.
- SCHEDULE 12.APPX A - 5, OATT SCHEDULE 12.APPENDIX A - 5 Metropolitan Edison Company, 20.0.0.
- SCHEDULE 12.APPX A - 7, OATT SCHEDULE 12.APPENDIX A - 7 Pennsylvania Electric Compan, 23.0.0.
- SCHEDULE 12.APPX A - 8, OATT SCHEDULE 12.APPENDIX A - 8 PECO Energy Company, 18.0.0.

- [SCHEDULE 12.APPX A - 9, OATT SCHEDULE 12.APPENDIX A - 9 PPL Electric Utilities Corpo, 17.0.0](#).
- [SCHEDULE 12.APPX A - 12, OATT SCHEDULE 12.APPENDIX A - 12 Public Service Electric and, 24.0.0.](#)
- [SCHEDULE 12.APPX A - 14, OATT SCHEDULE 12.APPENDIX A - 14 Monongahela Power Company, 20.0.0](#).
- [SCHEDULE 12.APPX A - 17, OATT SCHEDULE 12.APPENDIX A - 17 AEP Service Corporation, 28.0.0](#).
- [SCHEDULE 12.APPX A - 18, OATT SCHEDULE 12.APPENDIX A - 18 Duquesne Light Company, 9.0.0](#).
- [SCHEDULE 12.APPX A - 20, OATT SCHEDULE 12.APPENDIX A - 20 Virginia Electric and Power, 28.0.0](#).
- [SCHEDULE 12.APPX A - 23, OATT SCHEDULE 12.APPENDIX A - 23 American Transmission Syste, 19.0.0](#).
- [SCHEDULE 12.APPX A - 24, OATT SCHEDULE 12.APPENDIX A - 24 Duke Energy Ohio, Inc. and, 7.0.0](#).

Document Accession #: 20210521-3040      Filed Date: 05/21/2021
Document Content(s)

ER21-726-000.DOCX....................................................1

# ATTACHMENT B

*PJM Interconnection, L.L.C.*, Docket No. ER21-726-002,
Notice of Denial of Rehearing by Operation of Law,
176 FERC ¶ 62,045 (July 22, 2021).

176 FERC ¶ 62,045
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

PJM Interconnection, L.L.C.                              Docket No.  ER21-726-002

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW

(July 22, 2021)

    Rehearing has been timely requested of the Commission's order issued on
May 21, 2021, in this proceeding.  *PJM Interconnection, L.L.C.*, 175 FERC 61,152
(2021).

    In the absence of Commission action on the request for rehearing within 30 days
from the date the request was filed, the request for rehearing may be deemed to have been
denied.  16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713(f) (2020); *Allegheny Def. Project v.
FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).


                         Debbie-Anne A. Reese,
                         Deputy Secretary.

Document Content(s)

ER21-726-002 Notice.DOCX................................................1

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| **LONG ISLAND POWER AUTHORITY** | ) ) ) | |
| **and** | ) ) | **No. 21-1190** |
| **NEPTUNE REGIONAL TRANSMISSION SYSTEM, LLC,** | ) ) ) ) | **FERC Docket Nos. ER21-726-000, ER21-726-001, ER21-726-002** |
| *Petitioners*, | ) ) | |
| **v.** | ) ) | |
| **FEDERAL ENERGY REGULATORY COMMISSION,** | ) ) ) ) | |
| *Respondent*. | ) | |

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT
OF LONG ISLAND POWER AUTHORITY**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Circuit Rules of this Court, the Long Island Power Authority ("LIPA") respectfully submits the following:

LIPA is a corporate municipal instrumentality and a political subdivision of the State of New York, which operates on a non-profit basis. N.Y. Pub. Auth. L. § 1020-c. LIPA does not have any parent companies, subsidiaries, or affiliate that have any outstanding shares that are owned by the public.

LIPA's principal place of business is 333 Earle Ovington Boulevard, Uniondale, New York 11553.

Respectfully submitted,

*/s/ Michael F. McBride*
Michael F. McBride
Joseph B. Nelson
Michelle L. Castaline
Van Ness Feldman, LLP
1050 Thomas Jefferson St., NW
Washington, DC 20007-3877
Tel.:  (202) 298-1800
Fax:  (202) 338-2416
mfm@vnf.com
jbn@vnf.com
mcastaline@vnf.com

September 16, 2021          *Attorneys for Long Island Power Authority*

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| **LONG ISLAND POWER AUTHORITY** ) | |
| ) | |
| **and** ) | **No. 21-1190** |
| ) | |
| **NEPTUNE REGIONAL TRANSMISSION SYSTEM, LLC,** ) | **FERC Docket Nos. ER21-726-000, ER21-726-001, ER21-726-002** |
| ) | |
| *Petitioners*, ) | |
| ) | |
| **v.** ) | |
| ) | |
| **FEDERAL ENERGY REGULATORY COMMISSION,** ) | |
| ) | |
| *Respondent*. ) | |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Neptune Regional Transmission System, LLC ("Neptune") respectfully submits the following corporate disclosure statement:

California Public Employees' Retirement System, Ullico Inc., and Northwestern Mutual Life Insurance Company each indirectly have a 10% or more ownership interest in Neptune. No other company has a 10% or more ownership interest in Neptune.

Neptune developed and constructed, and owns and operates, the Neptune Transmission Line—an approximately sixty-five-mile underground and underwater

electric transmission facility that runs from northern New Jersey to Nassau County, New York.

Respectfully submitted,

*/s/ William R. Hollaway, Ph.D.*
William R. Hollaway, Ph.D.
Lucas C. Townsend
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8500
whollaway@gibsondunn.com
ltownsend@gibsondunn.com

*Counsel for Neptune Regional*
September 16, 2021    *Transmission System, LLC*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rules 15(c) and 25(d) of the Federal Rules of Appellate Procedure and Circuit Rule 15, I hereby certify that I have this day caused copies of the foregoing Petition for Review and Corporate Disclosure Statements to be served upon the Solicitor and Secretary of the Federal Energy Regulatory Commission ("FERC") (addresses below) by electronic mail and first class mail, postage prepaid, and upon each person designated on the official service list for the underlying FERC proceedings compiled by the FERC Secretary (service list attached) by electronic mail or first class mail, postage prepaid:

| | |
|---|---|
| Kimberly Bose<br>Secretary Federal Energy Regulatory<br>Commission 888 First Street, NE<br>Washington, DC 20426 | Robert H. Solomon, Solicitor<br>Federal Energy Regulatory Commission<br>888 First Street, NE<br>Washington, DC 20426<br>Robert.Solomon@ferc.gov |
| *Via eFiling* | *Via E-mail and First-Class Mail* |

*/s/ Michael F. McBride*
Michael F. McBride
Van Ness Feldman, LLP
1050 Thomas Jefferson St. NW, Suite 700
Washington, D.C. 20007-3877
Tel.: (202) 298-1800

September 16, 2021                *Attorney for Long Island Power Authority*

3

The following parties in Docket Nos. ER21-726-000, *et al.* are served by email:

| | |
|---|---|
| American Electric Power Service Corporation | Stacey Burbure<br>American Electric Power Company<br>801 Pennsylvania Avenue, NW<br>Washington DC 20004<br>slburbure@aep.com |
| American Electric Power Service Corporation | Kate Daley<br>1 Riverside Plaza<br>Columbus, OHIO 43215<br>kbdaley@aep.com |
| American Electric Power Service Corporation | Takis Laios<br>Director, Transmission Asset S<br>1 Riverside Plaza<br>Columbus, OHIO 43215<br>tlaios@aep.com |
| American Municipal Power, Inc. | Lisa McAlister<br>Deputy General Counsel - FERC/<br>American Municipal Power, Inc.<br>1111 Schrock Road, Suite 100<br>Columbus, OHIO 43229<br>lmcalister@amppartners.org |
| American Municipal Power, Inc. | Gerit F. Hull<br>Deputy General Counsel - Regul<br>American Municipal Power, Inc.<br>1111 Schrock Road, Suite 100<br>Columbus, OHIO 43229<br>ghull@amppartners.org |
| American Municipal Power, Inc. | Christopher J Norton<br>Director of Market Regulatory<br>American Municipal Power, Inc.<br>1111 Schrock Road, Suite 100<br>Columbus, OHIO 43229<br>cnorton@amppartners.org |
| Dominion Energy Services, Inc. | Cheri Yochelson<br>Senior Counsel<br>Dominion Energy Services, Inc.<br>120 Tredegar Street, RS-2<br>Richmond, VIRGINIA 23219<br>cheri.m.yochelson@dominionenergy.com |
| Dominion Energy Services, Inc. | Ryen Lawson<br>ryen.n.lawson@dominionenergy.com |

| | |
|---|---|
| Duke Energy Corporation | Molly Suda<br>Duke Energy Corporation<br>1301 Pennsylvania Ave NW<br>Suite 200<br>Washington, DC 20004<br>molly.suda@duke-energy.com |
| East Kentucky Power Cooperative, Inc. | Daniel Frank, Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W., Suite 700<br>Washington, DC 20001-3980<br>DanielFrank@eversheds-sutherland.com |
| East Kentucky Power Cooperative, Inc. | Denise R Foster<br>Vice President, Federal and RT<br>East Kentucky Power Cooperative, Inc.<br>4775 Lexington Road 40391<br>Lexington, KENTUCKY 40392-0707<br>denise.foster@ekpc.coop |
| East Kentucky Power Cooperative, Inc. | Allison Speaker<br>Eversheds Sutherland (US) LLP<br>700 6th Street NW<br>Washington, DC 20001<br>AllisonSpeaker@eversheds-sutherland.com |
| East Kentucky Power Cooperative, Inc. | Chuck Dugan<br>Director, Federal and RTO Regu<br>East Kentucky Power Cooperative, Inc.<br>4775 Lexington Road<br>Winchester, KENTUCKY 40391<br>chuck.dugan@ekpc.coop |
| Exelon Corporation | Valerie Teeter<br>Exelon Business Services Company<br>101 Constitution Ave., NW, Suite 400 East<br>Washington, DC 20001<br>Valerie.Teeter@exeloncorp.com |
| Exelon Corporation | Amy L Blauman<br>Associate General Counsel<br>Exelon BSC-Legal Regulatory<br>701 Ninth St., NW, Suite 9430<br>Washington, DC 20856<br>amy.blauman@exeloncorp.com |
| Exelon Corporation | Gary E. Guy<br>Assistant General Counsel<br>Exelon Business Services Company<br>701 Ninth Street, NW, Suite 9426<br>Washington, DC 20068<br>gary.guy@exeloncorp.com |

| | |
|---|---|
| Exelon Corporation | Arthur L Brown<br>Assistant General Counsel<br>Exelon BSC-Legal Regulatory<br>701 Ninth St., NW<br>Washington, DC 20068<br>ARTHUR.BROWN@EXELONCORP.COM |
| Hudson Transmission Partners, LLC | William Hollaway, Ph.D<br>GIBSON, DUNN & CRUTCHER, LLP<br>1050 Connecticut Ave., NW<br>Washington, DC 20036<br>WHollaway@gibsondunn.com |
| Hudson Transmission Partners, LLC | Janine L Durand<br>Senior Counsel<br>GIBSON, DUNN & CRUTCHER, LLP<br>1050 Connecticut Ave, NW<br>Washington, DC 20036<br>jdurand@gibsondunn.com |
| Long Island Power Authority | Joseph Nelson<br>Member<br>Van Ness Feldman, LLP<br>1050 Thomas Jefferson St, NW; Ste 700<br>Washington, DC 20007<br>jbn@vnf.com |
| Neptune Regional Transmission System, LLC | William Hollaway, Ph.D.<br>GIBSON, DUNN & CRUTCHER, LLP<br>1050 Connecticut Ave., NW<br>Washington, DC 20036<br>WHollaway@gibsondunn.com |
| Neptune Regional Transmission System, LLC | Janine L Durand<br>Senior Counsel<br>GIBSON, DUNN & CRUTCHER, LLP<br>1050 Connecticut Ave, NW<br>Washington, DC 20036<br>jdurand@gibsondunn.com |
| Neptune Regional Transmission System, LLC | Jeffrey Wood<br>jwood@powerbridge.us |
| Old Dominion Electric Cooperative | Adrienne Clair<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DC 20006<br>aclair@thompsoncoburn.com |

3

| | |
|---|---|
| Old Dominion Electric Cooperative | Jecoliah R Williams<br>Associate Attorney<br>Thompson Coburn LLP<br>1909 K Street, N.W., Suite 600<br>Washington, DC 20006-1167<br>jwilliams@thompsoncoburn.com |
| PJM Interconnection, L.L.C. | Mark J Stanisz<br>Senior Counsel<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>mark.stanisz@pjm.com |
| PJM Interconnection, L.L.C. | CRAIG GLAZER<br>V.P., Federal Gov't Policy<br>PJM Interconnection, L.L.C.<br>1200 G Street, N.W., Suite 600<br>Washington, DC 20005<br>CRAIG.GLAZER@PJM.COM |
| PPL Electric Utilities Corporation | Steven Nadel<br>PPL Services Corporation<br>2 North 9th St<br>Allentown, PENNSYLVANIA 18101<br>SMNadel@pplweb.com |
| Public Service Electric and Gas Company | Kyle Henne<br>Assistant Counsel - Regulatory<br>PSEG Services Corporation<br>601 New Jersey Avenue NW<br>Washington, DC 20001<br>kyle.henne@pseg.com |
| Public Service Electric and Gas Company | Cara Lewis<br>Managing Counsel - Federal Reg<br>PSEG Companies<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>cara.lewis@pseg.com |
| Public Service Electric and Gas Company | Robert E. Gardinor<br>Paralegal<br>PSEG Services Corporation<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>Robert.Gardinor@pseg.com |
| Rockland Electric Company | Margaret Comes, Senior Attorney<br>Consolidated Edison Company of New York, Inc.<br>4 Irving Place - Room 1815-S<br>New York, NEW YORK 10003<br>comesm@coned.com |

| Rockland Electric Company | Jame Huang<br>Project Specialist<br>Consolidated Edison Company of New York, Inc.<br>4 Irving Place<br>New York, NEW YORK 10003<br>huangja@coned.com |
|---|---|
| The Dayton Power and Light Company | Randall Griffin<br>Chief Regulatory Counsel<br>Dayton Power and Light Company, The<br>1065 Woodman Drive<br>Dayton, OHIO 45432<br>randall.griffin@aes.com |
| The Dayton Power and Light Company | John W Horstmann<br>Dayton Power and Light Company, The<br>315 Buckwalter Rd<br>Phoenixville, PENNSYLVANIA 19460<br>john.horstmann@aes.com |
| The FirstEnergy Transmission Companies | Evan Dean, Corporate Counsel<br>FirstEnergy<br>76 S. Main St., A-GO-15<br>Akron, OHIO 44224<br>edean@firstenergycorp.com |
| The FirstEnergy Transmission Companies | Greg F Hussing<br>Director of Ferc and RTO Techn<br>FirstEnergy Companies<br>76 S Main Street<br>Akron, OHIO 44308<br>hussingg@firstenergycorp.com |
| The FirstEnergy Transmission Companies | Lisa Tynes-Kunzo, Legal Specialist<br>FirstEnergy Companies<br>76 S. Main Street, A-15-GO<br>Akron, OHIO 44308<br>ltynes_kunzo@firstenergycorp.com |